UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONNECTICUT STATE POLICE UNION, | : |
| | : |
| Plaintiff, | : CIVIL ACTION NO. _____ |
| | : |
| v. | : |
| | : |
| JAMES ROVELLA, Commissioner | : |
| of Department of Emergency Services & | : |
| Public Protection | : |
| | : |
| Defendant. | : AUGUST 11, 2020 |

## VERIFIED COMPLAINT

### I.   INTRODUCTORY STATEMENT

1. The plaintiff, the Connecticut State Police Union ("CSPU" or the "Union"), brings this action to have Connecticut Public Act No. 20-1, sections 8 and section 9 declared unconstitutional because they violate the Contract Clause set forth in Article 1, Section 10 of the United States Constitution.

2. Article I, Section 10 of the United States Constitution provides: "No State shall … pass any … Law impairing the Obligation of Contracts …"

3. The current Collective Bargaining Agreement between the State of Connecticut and the Connecticut State Police Union was ratified by the Connecticut General Assembly on May 31, 2019 and is in effect through June 30, 2022.

4. Article 9, Section 2 of the current Collective Bargaining Agreement governs personnel files and grants members of the CSPU the right to object to freedom of information requests that invade their privacy. The section also provides that internal affairs investigations that resulted in a disposition of "exonerated, unfounded, or not sustained" cannot be disclosed.

1

10929568v1

5. On July 31, 2020, Governor Lamont signed Public Act 20-1 into law, portions of which expressly attempt to override Article 9, Section 2 of the Collective Bargaining Agreement.

6. Section 8 of Public Act 20-1 states that "[f]or any agreement or arbitration award approved **before**, on or after the effective date of this section … where any provision … pertaining to the disclosure of disciplinary matters or alleged misconduct would prevent the disclosure of documents … the provisions of the Freedom of Information Act shall prevail." (Emphasis added.)

7. Section 9 of Public Act 20-1 states that "[n]o collective bargaining agreement or arbitration award entered into **before**, on or after the effective date of this section, by the state and any collective bargaining unit of the Division of State Police within the Department of Emergency Services and Public Protection may prohibit the disclosure of any disciplinary action …" (Emphasis added.)

8. Sections 8 and 9 of Public Act 20-1 are unconstitutional because they violate Article I, Section 10 of the United States Constitution in that they impair contractual rights established in Article 9, Section 2 of the Collective Bargaining Agreement.

## II.   PARTIES

9. At all times relevant hereto, Plaintiff is the recognized collective negotiations representative for all Connecticut State Police, specifically for those employees in the NP-1 bargaining unit. The CSPU is a party to the Collective Bargaining Agreement.

10. At all times relevant hereto, Defendant James Rovella took actions as the Commissioner of DESPP and is named in his official capacity. As the Commissioner of

DESPP, Rovella serves as the administrative head and commanding officer of the State Police Division pursuant to Connecticut General Statutes § 29-1b.

### III.   JURISDICTION AND VENUE

11. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

12. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred here.

### IV.   STATEMENT OF FACTS

13. The mission of the CSPU is to uphold the honor of the State Police profession and vigilantly protect, promote, advance and improve working conditions, legal rights, compensation and benefits of its 857 members – Connecticut State Troopers, Sergeants and Master Sergeants (collectively, "State Troopers").

14. Connecticut State Troopers are represented exclusively for purposes of collective bargaining by CSPU.

**The Operative Collective Bargaining Agreement And Arbitration Awards**

15. The CSPU represented State Troopers in connection with negotiations for multiple collective bargaining agreements, including *inter alia* the State Police [NP-1] Bargaining Unit Contract between the State of Connecticut and the Connecticut State Police for July 1, 2015 to June 30, 2018.

16. Article 9 of the 2015-2018 Collective Bargaining Agreement is entitled, "Personnel Files," and states, in pertinent part:

> **Section One.   Where Maintained.**   An employee's Official Personnel Folder (OPF) shall be maintained at State Police Headquarters, except that the State Personnel Department may

3

10929568v1

maintain personnel files containing data relating to an employee's employment history and performance forms.

**Section Two.  Content.**  **(a)** All material bearing on an employee's personnel status, excluding uncompleted disciplinary investigations, or investigations into physical or mental fitness shall be placed in the OPF. Internal affairs investigations with a disposition of "exonerated unfounded or Not Sustained" will be excluded from the employee's personnel file.  This will include DPS-678C.

. . . .

**(c)** When an employee, after notification to him/her that a freedom of information request has been made concerning his/her file, objects to the release of that information on the basis of reasonable belief that the release would constitute an invasion of his/her privacy, the employee shall petition the Freedom of Information Commission for a stay on the release of said information, and the Department shall support the employee's petition and not release the information until the FOIC has made a final determination on the issue of whether said release would constitute an invasion of privacy.

17. The CSPU also represented State Troopers in connection with negotiations for the 2018-2022 collective bargaining agreement.

18. The CSPU and the State of Connecticut entered into the 2018-2022 State Police [NP-1] Bargaining Unit Contract Between the State of Connecticut and the CSPU (the "2018-2022 Collective Bargaining Agreement").

19. The 2018-2022 Collective Bargaining Agreement was the result of both negotiations and binding arbitration on certain issues.  Although numerous issues were submitted to an arbitrator, the CSPU and the State had reached a tentative agreement on Article 9 to the Collective Bargaining Agreement, which included new provisions to this section.  The tentative agreement on Article 9 (which included, *inter alia*, FOIA requests for personnel files and internal affairs investigations) was included in the final 2018-2022 Collective Bargaining Agreement.

4

20. The Arbitration Award was filed with the Connecticut General Assembly and the Connecticut General Assembly ratified the 2018-2022 Collective Bargaining Agreement on May 31, 2019.

21. Article 9 of the 2018-2022 Collective Bargaining Agreement is entitled, "Personnel Files," and states, in pertinent part:

> **Section One.  Where Maintained.**  An employee's Official Personnel Folder (OPF) shall be maintained at State Police Headquarters, except that the State Personnel Department may maintain personnel files containing data relating to an employee's employment history and performance forms.
>
> **Section Two. Content.**  (a) All material bearing on an employee's personnel status, excluding uncompleted disciplinary investigations, or investigations into physical or mental fitness shall be placed in the OPF. Internal affairs investigations with a disposition of "exonerated unfounded or Not Sustained" will be excluded from the employee's personnel file.  This will include DPS-678C.
>
> . . . .
>
> **(c)** When an employee, after notification to him/her that a freedom of information request has been made concerning his/her file, objects to the release of that information on the basis of reasonable belief that the release would constitute an invasion of his/her privacy, the employee shall petition the Freedom of Information Commission for a stay on the release of said information, and the Department shall support the employee's petition and not release the information until the FOIC has made a final determination on the issue of whether said release would constitute an invasion of privacy.  An employee's OPF and internal affairs investigations with only a disposition of "Exonerated, Unfounded or Not Sustained" shall not be subject to the Connecticut Freedom of Information Act.

A true and accurate copy of the 2018-2022 Collective Bargaining Agreement is attached hereto as **Exhibit A**.

22. Notably, the 2018-2022 Collective Bargaining Agreement, included a new, negotiated provision to Article 9, which provides: "An employee's OPF and internal

5

affairs investigations with only a disposition of 'Exonerated, Unfounded or Not Sustained' shall not be subject to the Connecticut Freedom of Information Act."

23. The 2018-2022 Collective Bargaining Agreement remains in effect as of the date of this filing and will not expire until June 30, 2022.

24. The 2018-2022 Collective Bargaining Agreement's requirement that "[a]n employee's OPF and internal affairs investigations with only a disposition of "Exonerated, Unfounded or Not Sustained" shall not be subject to the Connecticut Freedom of Information Act" was the subject of a 2020 grievance and related adjudicative proceedings. The contested issues included, *inter alia*, whether the DESPP was engaging in policies and practices in violation of the 2018-2022 Collective Bargaining Agreement with respect to releasing this type of information.

25. Notably, on June 10, 2020 a decision was issued declaring: "The Department shall cease and desist from releasing investigations that are Sustained, in whole or in part, without affording the subject Trooper an opportunity to object to FOI as the contract requires. Moreover, the Department shall cease and desist from seeking consent from Troopers to release investigations where the result is Exonerated, Unfounded, or Not Sustained as the contract does not allow release in those circumstances."

26. Approximately one month after having been ordered to cease and desist from engaging in practices and actions in violation of the 2018-2022 Collective Bargaining Agreement, the State sought to effectuate an unconstitutional and impermissible end-run around the Decision by adding to the Police Accountability Act two sections which nullify Article 9 of the 2018-2022 Collective Bargaining Agreement.

**Public Act 20-1 And Its Retroactive Nullification Of Section 9 Of The Operative Collective Bargaining Agreement And Certain Arbitration Awards**

27. Public Act 20-1 became effective on July 31, 2020. Section 8 of the Act states (emphasis added):

> Sec. 8. Subsection (e) of section 5-278 of the general statutes is repealed and the following is substituted in lieu thereof (Effective from passage):
>
> (e) [Where] (1) <u>Except as provided in subdivision (2) of this subsection, where</u> there is a conflict between any agreement or arbitration award approved in accordance with the provisions of sections 5-270 to 5-280, inclusive, on matters appropriate to collective bargaining, as defined in said sections, and any general statute or special act, or regulations adopted by any state agency, the terms of such agreement or arbitration award shall prevail; provided if participation of any employees in a retirement system is effected by such agreement or arbitration award, the effective date of participation in said system, notwithstanding any contrary provision in such agreement or arbitration award, shall be the first day of the third month following the month in which a certified copy of such agreement or arbitration award is received by the Retirement Commission or such later date as may be specified in the agreement or arbitration award.
>
> <u>(2) For any agreement or arbitration award approved **before**, on or after the effective date of this section, in accordance with the provisions of sections 5-270 to 5-280, inclusive, on matters appropriate to collective bargaining, as defined in said sections, where any provision in such agreement or award pertaining to the disclosure of disciplinary matters or alleged misconduct would prevent the disclosure of documents required to be disclosed under the provisions of the Freedom of Information Act, as defined in section 1-200, the provisions of the Freedom of Information Act shall prevail. The provisions of this subdivision shall not be construed to diminish a bargaining agent's access to information pursuant to state law.</u>

28. Section 9 of Public Act 20-1 states (emphasis added):

> Sec. 9. (NEW) (*Effective from passage*) No collective bargaining agreement or arbitration award entered into **before**, on or after the

7

effective date of this section, by the state and any collective bargaining unit of the Division of State Police within the Department of Emergency Services and Public Protection may prohibit the disclosure of any disciplinary action based on a violate of the code of ethics contained in the personnel file of a sworn member of said division.

29. Sections 8 and 9 of Public Act 20-1 have retroactive reach because they state that they apply to collective bargaining agreements entered into "***before***, on or after the effective date of this section."  They thereby impermissibly and unconstitutionally seek to nullify Article 9, Section 2(c) of the 2018-2022 Collective Bargaining Agreement.

**The Department's Bulletin Declaring That It Will Breach Its Obligations Under The 2018-2020 Collective Bargaining Agreement Because of Public Act 20-1.**

30. DESPP, through its State Police Training Academy, issued on July 31, 2020 a Training Bulletin which specified the actions it is taking and plans to take due to the passing of Public Act 20-1.

31. Training Bulletin #2020-17, which is dated July 31 2020, states, in pertinent part:

> **Purpose:** the purpose of this Training Bulletin is to provide guidance to Troopers regarding House Bill #6004. The Bulletin is intended only to provide a summary of recent changes, with additional written guidance and scenario-based training to follow from the Training Academy.
>
> . . . .
>
> Provisions that go into effect IMMEDIATELY upon passage (signature from the Governor)
>
> . . . .
>
> Nullifies collective bargaining language and arbitration awards previously negotiated, regarding the disclosure of disciplinary action, including Internal Affairs investigations.  The bill provides for the public disclosure of disciplinary matters or alleged misconduct

8

(sustained, unsustained, exonerated, and unfounded IAs) under the Freedom of Information Act, which will be released with the appropriate redactions.

A true and accurate copy of Training Bulletin #2020-17 is attached hereto as **Exhibit B**.

32. DESPP's Training Bulletin demonstrates that DESPP has created and posted an official policy document announcing its policy to immediately release certain information located within a Trooper's Official Personnel Folder or any information about an internal affairs investigation relating to a Trooper without regard to its obligations as set forth in the 2018-2022 Collective Bargaining Agreement. CPSU has learned that there are pending FOIA requests for personnel files and internal affairs investigation relating to its members and these members will suffer immediate and irreparable harm if this information is released in contravention to the requirements set forth in Article 9 of the 2018-2022 Collective Bargaining Agreement.

## V.     CLAIMS

### COUNT ONE:  Declaratory Judgment That Sections 8 And 9 Of Public Act 20-1 Are Unconstitutional Because They Violate Article I, Section 10 of the United States Constitution

33. CSPU restates all allegations contained in Paragraphs 1 through 32 hereof as if fully rewritten herein.

34. This is a case of actual controversy because CSPU seeks a declaration of its rights under the United States Constitution pursuant to the Federal Declaratory Judgment Act, codified at 22 U.S.C. §§ 2201 *et seq*.

35. This is a case of sufficient immediacy because the CSPU has learned that there are pending FOIA requests for personnel files and internal affairs investigation relating to its members and these members will suffer immediate and irreparable harm if

this information is released in contravention of the requirements set forth in Article 9 of the 2018-2022 Collective Bargaining Agreement.

36. The irreparable harm to CSPU is imminent because DESPP has already publicly announced its position that portions of the 2018-2022 Collective Bargaining Agreement have been nullified by Public Act 20-1 by, *inter alia*,

  a. Issuing a Bulletin stating that Public Act 20-1 immediately went into effect upon passage;

  b. Issuing a Bulletin stating that Public Act 20-1 immediately "Nullifies collective bargaining language and arbitration awards previously negotiated, regarding the disclosure of disciplinary action, including Internal Affairs investigations. The bill provides for the public disclosure of disciplinary matters or alleged misconduct (sustained, unsustained, exonerated, and unfounded IAs) under the Freedom of Information Act, which will be released with the appropriate redactions";

  c. Refusing to abide by the requirement set forth in Article 9, Section 2(c) of the 2018-2022 Collective Bargaining Agreement that a Trooper be notified when a FOIC request is made for his or her personnel file or internal affairs investigations so that he/she can have the opportunity to protect his/her privacy interest by filing an objection to the FOIA request if he/she reasonably believes that the release of the information would constitute an invasion of his or her privacy;

  d. Refusing to abide by the requirement set forth in Article 9 Section 2(c) of the 2018-2022 Collective Bargaining that "an employee's OPF and internal affairs investigations with only a disposition of "Exonerated, Unfounded or Not Sustained" shall not be subject to the Connecticut Freedom of Information Act"; and

10929568v1

  e. Otherwise engaging in conduct suggesting that it immediately intends to process FOIA requests for information located within a Trooper's Official Personnel Folder or any information about an internal affairs investigation relating to a Trooper without regard to their obligations as set forth in the 2018-2022 Collective Bargaining Agreement.

 37. This Court has subject matter jurisdiction because CPSU seeks a declaration of its constitutional rights. This Court has discretionary jurisdiction and may declare the rights of CSPU and/or grant further necessary or proper relief based thereon under 28 U.S.C. § 2201 *et seq*.

 38. As such, CSPU respectfully requests that the Court declare:

  Sections 8 and 9 of Public Act 20-1 are unconstitutional because they violate Article I, Section 10 of the United States Constitution in that they impair contractual rights established in Article 9, Section 2 of the Collective Bargaining Agreement.

**COUNT TWO:  Violation Of 42 U.S.C. § 1983 And The U.S. Constitution**

 39. CSPU restates all allegations contained in Paragraphs 1 through 38 hereof as if fully rewritten herein.

 40. Defendant James Rovella is employed by the State of Connecticut and acts under the color of law when taking action in his official capacity as a state actor. Such action includes but is not limited to directing the policy and practices of DESPP'S response to requests made pursuant to the Freedom of Information Act, which seek information located within a Trooper's Official Personnel Folder or any information about an internal affairs investigation relating to a Trooper.

11

10929568v1

41. Defendant, while acting under color of law, will violate CSPU's rights under the Contract Clause, as set forth in Article 1, Section 10 of the U.S. Constitution, which commands that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . .," if they implement Public Act 20-1 and the Training Bulletin because such actions are in contravention of Article 9, Section 2(c) of the 2018-2022 Collective Bargaining Agreement.

42. Section 1983 provides for declaratory relief.  CSPU seeks declaratory relief because there is an actual bona fide and substantial question in dispute that requires resolution because there is an imminent and immediate danger that Defendant Rovella will not follow the procedures and other requirements set forth in Article 9, Section 2(c) of the 2018-2022 Collective Bargaining Agreement concerning, *inter alia*, FOIA requests for information within personnel files and/or information about internal affairs investigations because:

    a. DESPP has issued a Bulletin stating that, effective immediately, the Public Act 20-1, "Nullifies collective bargaining language and arbitration awards previously negotiated, regarding the disclosure of disciplinary action, including Internal Affairs investigations.  The bill provides for the public disclosure of disciplinary matters or alleged misconduct (sustained, unsustained, exonerated, and unfounded IAs) under the Freedom of Information Act, which will be released with the appropriate redactions"; and

    b. there are pending FOIA requests for personnel files and internal affairs investigation relating to CSPU members and these members will suffer

immediate and irreparable harm if this information is released in contravention to the requirements set forth in Article 9 of the 2018-2022 Collective Bargaining Agreement.

43. As such, there is substantial uncertainty of legal relations that requires resolution.

44. CSPU seeks a declaration stating the Sections 8 and 9 of Public Act 20-1 are unconstitutional because they violate Article I, Section 10 of the United States Constitution in that they impair contract rights established in Article 9, Section 2 of the Collective Bargaining Agreement.

45. There is no other forum or proceeding that can provide CSPU with timely redress.

46. Section 1983 provides for injunctive relief.  CSPU seeks injunctive relief because the irreparable harm to CSPU is imminent since DESPP has already publically announced its position that portions of the 2018-2022 Collective Bargaining Agreement have been nullified by Public Act 20-1 by, *inter alia*,

    a. Issuing a Bulletin stating that Public Act 20-1 immediately went into effect upon passage;

    b. Issuing a Bulletin stating that Public Act 20-1 immediately "Nullifies collective bargaining language and arbitration awards previously negotiated, regarding the disclosure of disciplinary action, including Internal Affairs investigations.  The bill provides for the public disclosure of disciplinary matters or alleged misconduct (sustained, unsustained, exonerated, and unfounded IAs) under the Freedom of Information Act, which will be released with the appropriate redactions";

10929568v1

  c. Refusing to abide by the requirement set forth in Article 9, Section 2(c) of the 2018-2022 Collective Bargaining Agreement that a Trooper be notified when a FOIC request is made for his or her personnel file or internal affairs investigations so that he/she can have the opportunity to protect his/her privacy interest by filing an objection to the FOIA request if he/she reasonably believes that the release of the information would constitute an invasion of his or her privacy;

  d. Refusing to abide by the requirement set forth in Article 9, Section 2(c) of the 2018-2022 Collective Bargaining that "an employee's OPF and internal affairs investigations with only a disposition of "Exonerated, Unfounded or Not Sustained" shall not be subject to the Connecticut Freedom of Information Act"; and

  e. Otherwise engaging in conduct suggesting that it intends to process FOIA requests for information located within a Trooper's Official Personnel Folder or any information about an internal affairs investigation relating to a Trooper without regard to its obligations as set forth in the 2018-2022 Collective Bargaining Agreement.

 47. CSPU seeks injunctive relief in the form of an order requiring, the Defendant to comply with his obligations under Article 9, Section 2(c) of the 2018-2022 Collective Bargaining Agreement by, *inter alia*,

  a. notifying a Trooper when a FOIA request for his or her personnel file or internal affairs investigation is made so that he/she can have the opportunity to protect his/her privacy interest if he/she reasonably believes that the release of the information would constitute an invasion of his or her privacy; and

  b. acting in accordance with and/or otherwise following the agreed-upon language that "an employee's OPF and internal affairs investigations with only a

disposition of "Exonerated, Unfounded or Not Sustained" shall not be subject to the Connecticut Freedom of Information Act."

48. If no such relief is granted, Plaintiff will suffer irreparable harm.

49. Plaintiff has no other adequate remedy at law.

## VI. DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff, the Connecticut State Police Union, respectfully requests judgment as follows:

A. A declaration that Sections 8 and 9 of Public Act 20-1 are unconstitutional because they violate Article I, Section 10 of the United States Constitution in that they impair contractual rights established in Article 9, Section 2 of the Collective Bargaining Agreement.

B. An injunction ordering the Defendant to comply with his obligations .under Article 9, Section 2(c) of the 2018-2022 Collective Bargaining Agreement by, *inter alia*, (1) notifying a Trooper when a FOIA request for his or her personnel file or internal affairs investigation is made so that he/she can have the opportunity to protect his/her privacy interest if he/she reasonably believes that the release of the information would constitute an invasion of his or her privacy; and (2) acting in accordance with and/or otherwise abiding by the agreed-upon language that "an employee's OPF and internal affairs investigations with only a disposition of "Exonerated, Unfounded or Not Sustained" shall not be subject to the Connecticut Freedom of Information Act."

C. Attorneys' fees in connection with prosecuting this action pursuant to 42 U.S.C. § 1983 and § 1988(b);

D. Costs; and

E. Such other relief as this Court determines to be equitable and just.

Date: August 11, 2020

Respectfully submitted,

THE PLAINTIFF,
Connecticut State Police Union


By: ___/s/ Proloy K. Das_____
     Proloy K. Das – ct28059
     pdas@murthalaw.com
     Kristen L. Zaehringer – ct27044
     kzaehringer@murthalaw.com

Murtha Cullina LLP
280 Trumbull Street
Hartford, Connecticut 06103
Telephone:  860.240.6000
Facsimile:   860.240.6150

*Attorneys for Plaintiff*

## **VERIFICATION OF COMPLAINT**

Pursuant to 28 U.S.C. § 1746, Andrew N. Matthews declares as follows:

1. I am the Executive Director of the Plaintiff, the Connecticut State Police Union.

2. I have read the foregoing complaint and know the contents and state that the statements therein are true and correct of my own personal knowledge.

3. I am competent to testify to the contents therein which I declare to be true of my own personal knowledge.

4. I declare under penalty of perjury that the foregoing is true and correct.


Executed on August __10th__, 2020

By: _____
Andrew N. Matthews

10929568v1