**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

CONNECTICUT STATE POLICE UNION   :        No. 3:20-cv-01147-CSH
      *Plaintiff*,   :
         :
      v.   :
         :
JAMES ROVELLA,   :
      *Defendant*.   :        AUGUST 18, 2020

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff asks this Court to issue the extraordinary remedy of a temporary restraining order enjoining portions of Public Act 20-1 ("the Act") that require disclosure of State Police disciplinary records under the Freedom of Information Act. Because the Act is duly enacted public interest legislation that the legislature passed for the public good and not out of any self-interest, it is constitutional under the applicable rational basis standard of review and Plaintiff is not entitled to the extraordinary relief it seeks.

## BACKGROUND

Like most other states, Connecticut has enacted a comprehensive Freedom of Information Act ("FOIA") that governs the disclosure of public records. Conn. Gen. Stat. § 1-200 *et seq.* Public records are statutorily defined as "any recorded data or information relating to the conduct of the public's business prepared, owned, used, received or retained by a public agency, or to which a public agency is entitled to receive a copy by law or contract under section 1-218 . . . ." Conn. Gen. Stat. § 1-200(5). With limited exceptions, FOIA provides that "all records maintained or kept

on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to (1) inspect such records promptly during regular office or business hours, (2) copy such records in accordance with subsection (g) of section 1-212, or (3) receive a copy of such records in accordance with section 1-212." Conn. Gen. Stat. § 1-210(a). FOIA thus "expresses a strong legislative policy in favor of the open conduct of government and free public access to government records." *Bd. of Trustees of Woodstock Acad. v. Freedom of Info. Comm'n*, 181 Conn. 544, 550 (1980) (citations and quotation marks omitted).

This case involves the intersection between this clear and comprehensive public policy reflected in FOIA and the 2018-2022 Collective Bargaining Agreement ("CBA") between the State and State Police employees in the NP-1 bargaining unit, for which Plaintiff is the recognized bargaining representative.

For the 2015-2018 Collective Bargaining Agreement, which immediately preceded the CBA and is not at issue in this case, the parties agreed to a contractual provision that required the Department of Emergency Services and Public Protection to notify State Troopers of any FOIA request related to their personnel file. If the Trooper objected to disclosure of the requested records, he or she could then petition the Freedom of Information Commission for a stay and to prohibit disclosure of the records as an invasion of privacy. Compl., ¶ 16; *see* Conn. Gen. Stat. § 1-210(b)(2) (providing that disclosure of such records not required when disclosure "would constitute an invasion of personal privacy").

The parties subsequently negotiated the CBA, which the legislature ratified on May 31, 2019. Compl., ¶ 20. In addition to the notice and petition language discussed above, the CBA included new language providing that "[a]n employee's [Official Personnel File] and internal affairs investigations with only a disposition of 'Exonerated, Unfounded or Not Sustained' shall not be subject to the Connecticut Freedom of Information Act" (the "non-disclosure provision"). *Id.*, ¶¶ 21-22.

The records covered by the CBA's non-disclosure provision clearly are public records for purposes of FOIA, and there is nothing in FOIA that exempts them from disclosure under § 1-210(a). The non-disclosure provision nevertheless initially was permissible because at the time the CBA was ratified General Statutes § 5-278(e) provided that "[w]here there is a conflict between any agreement or arbitration award approved in accordance with the provisions of sections 5-270 to 5-280 . . . and any general statute or special act, or regulations adopted by any state agency, the terms of such agreement or arbitration award shall prevail . . . ."

In response to "a Minneapolis police officer's killing of George Floyd" on May 25, 2020, which led to mass and sustained protests across the country and "awoke[] the public's demand for reforms to our law enforcement agencies and progress toward a just and equitable society," the Governor issued a proclamation on July 17, 2020, calling for a special session of the General Assembly.[1] The result of that special session was Public Act 20-1, two provisions of which are relevant here.

---

[1]   https://portal.ct.gov/-/media/Office-of-the-Governor/News/20200717-Call-of-July-2020-Special-Session.pdf (last visited August 16, 2020).

First, section 8 of the Act amends § 5-278(e) to provide that:

[f]or any agreement or arbitration award approved before, on or after the effective date of this section, . . . where any provision in such agreement or award pertaining to the disclosure of disciplinary matters or alleged misconduct would prevent the disclosure of documents required to be disclosed under the provisions of [FOIA] . . . the provisions of the [FOIA] shall prevail.

Compl., ¶ 27.

Second, section 9 of the Act provides that:

[n]o collective bargaining agreement or arbitration award entered into before, on or after the effective date of this section, by the state and any collective bargaining unit of the Division of State Police within the Department of Emergency Services and Public Protection may prohibit the disclosure of any disciplinary action based on a violat[ion] of the code of ethics contained in the personnel file of a sworn member of said division.

Compl., ¶ 28.

Collectively, sections 8 and 9 of the Act supersede the CBA and require that the records contemplated by the non-disclosure provision of that agreement are again subject to disclosure. Importantly, however, that change does not apply just to the CBA or the State Police. To the contrary, the requirement in section 8 that FOIA prevails over any contrary contract language applies to *all* collective bargaining agreements that are or were approved under §§ 5-270 to 5-280. That includes but is not limited to other state law enforcement officers beyond the State Police. *Cf.* Exhibit A. Further, the same disclosure requirements under FOIA apply to municipal police officers throughout the State as well. *See generally, e.g., City of Hartford v FOIC*, 201 Conn. 421 (1986). The legislature thus acted broadly for the public good and not to target any particular contract or class of state employees.

4

## ARGUMENT

The Court should deny the motion because Plaintiff has failed to meet its burden of showing that the challenged legislation meets the criteria necessary to establish a violation of the Contracts Clause, and it has therefore failed to establish that it is likely to prevail on the merits of its claim.  Specifically, and contrary to Plaintiff's conclusory assertions, the Act does not substantially impair the CBA for purposes of the Contract Clause because the records at issue have long been regulated under FOIA, and Plaintiff's members therefore had no reasonable expectation that the legislature could not amend the statutory scheme if the public interest demands it.  Even if any impairment is substantial, moreover, the Act is entitled to rational basis review and it easily survives under that standard.  The legislature passed the Act for the public good and not out of any self-interest or desire to renege on a bad deal.  Indeed, the challenged provisions in the Act are not limited to the CBA at issue here, and instead apply more broadly to *all* of the State's collective bargaining agreements approved under §§ 5-270 to 5-280, both past, present and future.  Under such circumstances, this Court must defer to the legislature's policy judgment made exclusively in the public interest.

## I.   STANDARD FOR A PRELIMINARY INJUNCTION

A preliminary injunction "is an extraordinary and drastic remedy" that "should not be granted unless the movant, by a ***clear showing***, carries the burden of persuasion."  *Christa McAuliffe Intermediate School PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 273 (S.D.N.Y. 2019) (emphasis in original, quotation marks omitted).

Plaintiff is entitled to such relief only if it can establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). While this is a high burden even in normal cases, it is particularly high when, as here, "the injunction sought will alter rather than maintain the status quo" of current legislation. *Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342, 349 (2d Cir. 2003). For the court to grant such preliminary injunctive relief, the movant "must demonstrate a 'substantial' likelihood of success on the merits." *New York Progress & Protection PAC v. Walsh*, 733 F.3d 483, 486 (2d. Cir. 2013).

Further, when as here the injunction seeks to invalidate duly enacted legislation adopted in the public interest, that public interest pervades all aspects of the analysis; "[w]henever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief." *Brody v. Vill. of Port Chester*, 261 F.3d 288, 290-91 (2d Cir. 2001) (quotation marks omitted). "Otherwise a claim that appears meritorious at a preliminary stage but is ultimately determined to be unsuccessful will have precipitated court action that might needlessly have injured the public interest." *Id.* (quotation marks omitted). Importantly, Plaintiff's "burden . . . to prove that they are likely to succeed on the merits" includes the burden to

present a factual record that supports Plaintiff's claimed entitlement to extraordinary relief. *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 115 n.6, 118 (2d Cir. 2014).

## II. PLAINTIFF HAS NOT MET ITS BURDEN TO DEMONSTRATE THAT IT IS SUBSTANTIALLY LIKELY TO PREVAIL ON THE MERITS

It is well established that the Contract Clause does not present an absolute bar to the State's ability to impair contracts. *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 367 (2d Cir. 2006). To the contrary, the Clause recognizes and preserves the State's sovereign power to legislate in the public interest, and courts must defer to those legislative policy choices even if they "ha[ve] the result of modifying or abrogating contracts already in effect." *City of El Paso v. Simmons*, 379 U.S. 497, 508-09 (1965) (quotation marks omitted). That is true even if the State is a party to the impaired contract. *Sullivan v. Nassau Cty. Interim Fin. Auth.*, 959 F.3d 54, 65-67 (2d Cir. 2020). To determine whether such laws violate the Contract Clause, therefore, the Court must first consider whether the contractual impairment is substantial. If it is not then there is no violation and the claim fails. Even if the impairment is substantial, however, the Court still must uphold the law if it serves a legitimate public purpose such as remedying a general social or economic problem and the means chosen to accomplish that purpose are reasonable and necessary. *Id.* at 64 (2d Cir. 2020), citing *Buffalo Teachers*, 464 F.3d at 368. The Act clearly is constitutional under this framework.

## A.    Any Impairment Of The CBA Is Not Substantial For Purposes Of The Contract Clause

Although the Act impairs the CBA, any impairment is not substantial for purposes of the Contract Clause because it was eminently foreseeable given the nature and history of the FOIA regulatory framework.

To satisfy this prong of the analysis "the party complaining of unconstitutionality has the burden of demonstrating" that any impairment of the contract is substantial. *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 472 (1985). The mere fact that a contractual provision was negotiated and is important does not mean that any impairment of it is "substantial" for constitutional purposes. Rather, "[t]he substantiality of an impairment depends upon the extent to which reasonable expectations under the contract have been disrupted." *Sullivan*, 959 F.3d at 64 (quotation marks omitted); *see Elmsford Apartment Assocs., LLC v. Cuomo*, No. 20-CV-4062 (CM), 2020 WL 3498456, at *12-13 (S.D.N.Y. June 29, 2020). Such expectations generally are unfounded when the contractual provision at issue relates to a topic that is subject to pervasive government regulation, because in such areas the potential for further regulation is foreseeable and the party's ability to prevail therefore "greatly diminished." *All. of Auto. Mfrs., Inc. v. Currey*, 984 F. Supp. 2d 32, 54 (D. Conn. 2013) ("*AAM*"). That is especially true when the particular topic at issue has been regulated in the past and when the impairment "covers the same topic [as the prior regulation] and shares the same overt legislative intent to the protect [the parties protected by the prior regulation]." *Elmsford*, 2020 WL 3498456, at *12–13.

Plaintiff has not met its burden to demonstrate a substantial impairment of the CBA under this framework.  Indeed, Plaintiff's conclusory analysis of this issue is limited to a single paragraph in which Plaintiff simply points out that the parties recently negotiated and agreed to the contractual provision at issue.  Pl. Br. at 12. That is of course true of virtually every contractual provision that may be impaired, and it does nothing to illustrate why future legislation in this area was unforeseeable notwithstanding the parties' earlier agreement.[2]  *Cf. City of El Paso*, 379 U.S. at 508-09 ("[i]t does not matter that legislation [enacted in the public interest] has the result of modifying or abrogating contracts already in effect") (quotation marks omitted).

Nevertheless, even if Plaintiff had adequately briefed this issue, the potential for future public interest legislation affecting the CBA's non-disclosure provisions was foreseeable for three reasons.

First, the disciplinary records at issue clearly are public records, and the disclosure or non-disclosure of public records is subject to extensive regulation by the State through FOIA.  *See* Conn. Gen. Stat. §§ 1-200(5) and 1-210(a); *see* Conn. Gen. Stat. 1-200 *et seq.*  That statutory program has been in existence for decades, and it provides a comprehensive framework that governs what public records may

---

[2]     As discussed below, when the legislature passed the Act it was acting in its sovereign capacity to legislate for the public good, and not out of a self-interest to "welch" on its obligations under a bad contract.  *Buffalo Teachers*, 464 F.3d at 370. The fact that the State is a party to the CBA is therefore of no moment in the substantial impairment analysis, and the Court should analyze the issue of foreseeability in the same manner that it would if the CBA were a contract between private parties.  *See infra* at 13-17.

be disclosed to the public, and when and how such disclosure may take place.  There can thus be no dispute that the subject matter of the impaired CBA provisions—the disclosure of public records relating to disciplinary matters of Plaintiff's members—is and has long been subject to extensive regulation by the State.  The existence of that comprehensive regulatory program on this exact topic not only "greatly diminishe[s]" Plaintiff's expectations in this area, it should eliminate those expectations altogether.  *AAM*, 984 F. Supp. at 54.

Second, that conclusion is confirmed by the broad and inclusive public policy reflected in FOIA, and the fact that the CBA's non-disclosure provision is a clear outlier that squarely conflicts with that policy.  Specifically, it is well established that "the Freedom of Information Act expresses a strong legislative policy in favor of the open conduct of government and free public access to government records."  *Bd. of Trustees of Woodstock Acad.*, 181 Conn. at 550 (citations and quotation marks omitted).  The Act thus requires "diligent protection of the public's right of access to agency proceedings," and "[t]he general rule under the act is disclosure" such that "every public record and every public meeting [should be] open to the public at all times with certain specified exclusions."  *Id.*; *City of Stamford v. Freedom of Info. Comm'n*, 241 Conn. 310, 313 (1997).  Although those "specified exclusions" do exist, they must be "narrowly construed" to ensure that the legislature's emphatic "policy favoring disclosure" is effectuated.  *City of Stamford*, 241 Conn. at 313.

The CBA's non-disclosure provision squarely conflicts with this public policy reflected in FOIA.  Although the legislature certainly could agree to make those "specified exclusions," given the comprehensive and longstanding regulatory program, the public policy it is intended to achieve, and the fact that the legislature retains its sovereign authority to implement and amend that public policy in the public interest, Plaintiff's members had no expectation that the legislature could not change course if events required it to do so in the public interest.

Third, to the extent the State's pervasive regulation in this area and the clear public policy choices reflected in FOIA are not enough—which they should be—any expectation that Plaintiff's members may have had is further eroded by the history of regulation of the particular records at issue in this case.  As Plaintiff concedes, the CBA's non-disclosure provision is of recent vintage and did not even arise until 2018.  For the entire period prior to 2018, therefore, FOIA applied to and required disclosure of these exact same records.[3]  By bringing those records back within the disclosure requirements that apply to all other public records—and that applied to these same records prior to 2018—the Act clearly "covers the same topic" as the prior regulatory scheme, applies to and requires disclosure of the same public records, "and shares the same overt legislative intent to the protect [the parties protected by the prior regulation];" namely, the general public.  *Elmsford*, 2020 WL 3498456, at *12–13, quoting *AAM*, 984 F. Supp. 2d at 55.   Under such

---

[3]     Prior to the 2018-2022 CBA, DESPP was required to notify employees of a request concerning their file and the employee could then file an objection with the Freedom of Information Commission seeking to preclude disclosure on grounds of an invasion of privacy.  Compl., ¶ 16; *see* Conn. Gen. Stat. § 1-210(b)(2).

circumstances, Plaintiff and its members again had no reasonable expectation that the legislature could not act in the manner that it did.   As a matter of law, therefore, any impairment of the CBA is insubstantial for purposes of the Contract Clause and cannot support a constitutional violation.

**B.   The Act Is A Reasonable And Necessary Means To Achieving A Legitimate Public Purpose**

Even if the Court concludes that Plaintiff has adequately demonstrated a substantial impairment of the CBA, Plaintiff still cannot succeed on the merits because the Act is a reasonable means to achieve a legitimate state interest.   This Court must defer to that legislative policy choice, which the legislature made in the public interest and not out of any self-interest on the part of the State.

As an initial matter, the Act is based on two public policies both of which unquestionably are legitimate.   The first is the public interest embodied in FOIA in "favor of the open conduct of government and free public access to government records."   *Bd. of Trustees of Woodstock Acad.*, 181 Conn. at 550.   The second, which is related, is the public interest to ensure accountability of law enforcement in the wake of recent events and the nationwide protests they have prompted.   There is no plausible argument that those are not legitimate public interests, and Plaintiff does not even attempt to argue otherwise.   *See* Pl. Br. at 13 (assuming that a legitimate public interest exists).   The only question, then, is whether the Act is a reasonable means to achieve those concededly legitimate state interests.   It clearly is.

1.    **The Act Is Constitutional Under The Deferential Rational Basis Standard Of Review That Governs This Legislation Enacted In The Public Interest**

a.    *Because The Legislature Acted For The Public Good And Not Out Of Any Self-Interest, Rational Basis Applies And The Court Must Defer To The Legislature's Judgment*

Plaintiff improperly asks the Court to assess the Act using the "less deference" standard of review that courts sometimes apply to legislative impairments of State contracts. Pl. Br. at 13-14, citing *United States Trust Co. v. New Jersey*, 431 U.S. 1, 26-27, 30-31 (1977). In doing so, Plaintiff inexplicably fails to acknowledge *Sullivan v. Nassau Cty. Interim Fin. Auth.*, 959 F.3d 54 (2d Cir. 2020), which is the Second Circuit's most recent and authoritative decision on this issue. *Sullivan* makes clear that the "less deference" standard does not apply and that the Court should instead analyze the public interest legislation at issue using the deferential rational basis standard of review.

In *Sullivan*, the Court held that "[t]he Contracts Clause, as applied to governmental contracts, incorporates two differing imperatives. The first is that the government, like private parties, is bound by its contracts and may not use its governmental powers to impair these contracts materially. The second is that the state may not contract away its power to govern in the public interest." *Id.* at 63. The latter interest is critical here, as it is well established that the Clause does not trump the State's sovereign power to legislate in the public interest. *Buffalo Teachers*, 464 F.3d at 367, citing *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 240 (1978), *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 434 (1934).

Given those two competing interests, when confronted with an impairment to a public contract "[t]he key" to the analysis "is to determine whether the state in breaching a contract is acting like a private party who reneges to get out of a bad deal, or is governing, which justifies its impairing the plaintiffs' contracts in the public interest." *Sullivan*, 959 F.3d at 65. If the State is "welching" on bad contractual obligations, then the "less deference" standard articulated in *Buffalo Teachers* applies and "the reasonableness and necessity of the government's actions must be shown." *Id.* at 65-66. But if the State is simply governing in the public interest then the Court applies the same rational basis deference that it would afford to legislation impairing a private contract. *Id.* at 65-66.

In determining which of these two standards applies—"less deference" or rational basis—"the presence or absence of a state as a party to the contract is not determinative." *Buffalo Teachers*, 464 F.3d at 370. The inquiry instead "focus[es] on whether the contract-impairing law is ***self-serving***" and whether the State "alter[ed] the contract ***for its own benefit***." *Sullivan*, 959 F.3d at 66, quoting *Buffalo Teachers*, 464 F.3d at 370 (emphasis added). Such self-interest generally refers to "impairments imposed to benefit the state financially, or as a matter of political expediency." *Id.*

Importantly, *Sullivan* makes clear that it is Plaintiff's burden to demonstrate that indicia of self-interest exist, and "'less deference' scrutiny applies only when the plaintiff has put forward some evidence tending to show that the government has engaged in reneging instead of 'genuinely acting for the public good.'" *Id.* The

Court identified three factors that might guide the Court's analysis in that regard; namely, whether there is evidence that (1) the contractual impairment was chosen when other politically unpopular alternatives were available; (2) the law targets "a narrow class of individuals" when its goals "could be served equally by spreading the necessary sacrifice throughout a broader, and perhaps more politically powerful, base;" and (3) "the contractual impairment is a response to a well-known, long-standing, problem, as opposed to a change in circumstances." *Id.* at 66-67.

Applying this framework here, rational basis review applies because the legislature clearly was "acting for the public good" and not out of any self-interest to renege on a bad contract. *Id.* Indeed, the challenged provisions in the Act are not limited to the CBA and instead apply broadly to ***all*** of the State's collective bargaining agreements approved under §§ 5-270 to 5-280, both past, present and future. Further, the State itself receives no financial or other benefit from the challenged provisions of the Act, as all benefits run directly to the general public who can now access these important records and see for themselves how state government is operating in this area. That clearly is a ***public*** benefit, not a private benefit that runs to the State as a contracting party. *See, Dep't of Pub. Safety, Div. of State Police v. Freedom of Info. Comm'n*, 242 Conn. 79, 89 (1997) (recognizing that the public's legitimate concern for the fairness of an investigation outweighs the undocumented assertion that any disclosure of investigative proceedings may lead to a proliferation of spurious claims of misconduct, even when the investigation leads to a finding of exoneration).

Although this conclusion is readily apparent, it is confirmed by the fact that Plaintiff does not even attempt to argue or present evidence about the self-interest factors discussed in *Sullivan*.  For example, Plaintiff does not identify or allege any politically unpopular alternatives that were available, and it is difficult to imagine what those alternatives might be given that the records are either subject to disclosure or they are not.  Nor does Plaintiff identify a broader class of individuals whose similar disciplinary records are not subject to disclosure, much less argue that the police accountability goals of the Act could be served equally well by expanding the Act's disclosure requirements to those unidentified individuals. Indeed, the disclosure requirement of FOIA apply to municipal and other state law enforcement officers in the same way that they now do to the State Police.  *See generally City of Hartford v FOIC*, 201 Conn. 421 (1986).  And finally, the impairment clearly is a legitimate legislative response to changed circumstances brought about by the death of George Floyd and the nationwide mass protests and calls for police reforms that his death prompted.

> **b.**    ***The Act Easily Survives Under The Deferential Rational Basis Standard Of Review That Applies Here***

Because the legislature was "genuinely acting for the public good" and not out of any self-interest, the "less deference" standard does not apply and the Act is entitled to the same deference that courts afford to impairments of purely private contracts.  *Sullivan*, 959 F.3d at 65-67.  That deference is substantial and is akin to the rational basis standard that applies under due process.  *Sal Tinnerello & Sons,*

16

*Inc. v. Town of Stonington*, 141 F.3d 46, 54-55 (2d Cir. 1998); *Ass'n of Surrogates &*
*Supreme Court Reporters Within City of New York v. State of N.Y.*, 940 F.2d 766,
771 (2d Cir. 1991); *see Park Pet Shop, Inc. v. City of Chicago through the City*
*Council of Chicago*, No. 15 C 1450, 2015 WL 6756288, at *5 (N.D. Ill. Nov. 5, 2015);
*Imprisoned Citizens Union v. Shapp*, 11 F. Supp. 2d 586, 601 (E.D. Pa. 1998); *Green*
*v. Peters*, No. 71 C 1403, 1997 WL 769458, at *12 (N.D. Ill. Dec. 5, 1997).

Rational basis is a "paradigm of judicial restraint" that "is very difficult to
overcome . . . ." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 314 (1993);
*Beatie v. City of New York,* 123 F.3d 707, 712 (2d Cir. 1997).  Legislation will
survive rational basis review if it is "supported by a legitimate legislative purpose
furthered by rational means." *Gray,* 467 U.S. at 729.  In conducting such review,
the court need only find "'plausible reasons' for [the] legislative action, whether or
not such reasons underlay the legislature's action." *Beatie,* 123 F.3d at 712, citing
*United States Ret. Bd. v. Fritz,* 449 U.S. 166, 179 (1980).  Further, it is well
established that this Court cannot "strike down a law as irrational simply because
it may not succeed in bringing about the result it seeks to accomplish [or] because
the problem could have been better addressed in some other way." *Id.*  Similarly,
legislation does not violate rational basis scrutiny merely because "no empirical
evidence supports the assumptions underlying the legislative choice." *Id.*  Rather,
"[s]o long as they do not burden fundamental rights or single out suspect
classifications, lawmakers are free to engage in 'rational speculation unsupported
by evidence.'" *Id.,* quoting *FCC v. Beach Communications,* 508 U.S. 307, 315 (1993).

The Act easily survives under this deferential framework.  Again, the public access and police accountability goals that are the basis for the Act clearly are legitimate.  And requiring disclosure of law enforcement disciplinary records to the public unquestionably is a rational way to achieve those goals.  Nothing else is required, and Plaintiff's claim therefore fails on the merits.

> **2.  Even If The "Less Deference" Standard Applied, Plaintiff Has Not Met Its Burden To Demonstrate That The Act Fails Under That Standard**

Even if the Court concludes that "less deference" scrutiny applies, the Act is constitutional under that standard as well.  For an impairment to be upheld under less deference scrutiny "it must be shown that the state did not (1) consider impairing the . . . contracts on par with other policy alternatives or (2) impose a drastic impairment when an evident and more moderate course would serve its purpose equally well, nor (3) act unreasonably in light of the surrounding circumstances." *Buffalo Teachers*, 464 F.3d at 371.  All of these factors are satisfied here.  Indeed, there are no other or more moderate alternatives because the records at issue are either subject to disclosure under FOIA or they are not; there is no middle ground.  Nor is there any suggestion that the legislature acted unreasonably to require disclosure of these records in light of the surrounding circumstances.  To the contrary, the "surrounding circumstances" consist of nationwide mass protests and calls for police reform following the death of George Floyd at the hands of law enforcement.  Making disciplinary records public in that context is eminently reasonable, and Plaintiff makes no argument to the contrary.

In fact, Plaintiff does not provide any coherent argument on this issue at all. Its analysis is again limited to a single paragraph in which it simply summarizes some aspects of the Supreme Court's decision in *U.S. Trust Co.*, without any discussion about how the principles from that case actually relate to the circumstances here.  Pl. Br. at 13.  To the extent Plaintiff does make an actual argument, it is limited to the conclusory assertion that "[a] state is not free to impose a drastic impairment when an evident and more moderate course would answer its concerns equally well."  Pl. Br. at 13, citing *U.S. Trust Co.*, 431 U.S. at 30.  True enough.  But Plaintiff does not attempt to demonstrate whether or how the impairment here is "drastic."  More importantly, it does not even bother to identify what purported "more moderate" alternatives the legislature supposedly should have adopted, much less attempt to demonstrate how those unidentified alternatives would answer the legislature's regulatory concerns "equally well."

It is Plaintiff's burden to demonstrate that the Act does not satisfy "less deference" scrutiny, especially in the context of this motion for a TRO.  *United Auto., Aerospace, Agr. Implement Workers of Am. Int'l Union v. Fortu%25no*, 633 F.3d 37, 43 (1st Cir. 2011); *but see Toledo Area AFL–CIO Council v. Pizza*, 154 F.3d 307, 323 (6th Cir. 1998); *State of Nev. Emps. Ass'n, Inc. v. Keating*, 903 F.2d 1223, 1228 (9th Cir. 1990).  Because Plaintiff has not even attempted to satisfy that burden and cannot do so, it is not entitled to the extraordinary preliminary relief it seeks.

19

## III.   THE EQUITIES DO NOT SUPPORT A TEMPORARY RESTRAINING ORDER

Plaintiff also is not entitled to a TRO or preliminary injunction because the balancing of the equities do not support such relief.  Again, the legislature has made a policy choice in the public interest in response to nationwide calls for police reform.  That policy choice was not made out of any self-interest on the part of the State, and was instead made for reasons that the legislature has determined are for the public good.  It would be inequitable for this Court to second guess that legislative policy judgment and deprive the general public of the public records that they are entitled to receive under the law.

## IV.   PLAINTIFF HAS NOT DEMONSTRATED IRREPARABLE HARM

The Second Circuit has made clear that "the irreparable harm inquiry depends on the merits of the claims," as without a constitutional violation there can by definition be no irreparable harm.  *Hsu By & Through Hsu v. Roslyn Union Free Sch. Dist. No. 3*, 85 F.3d 839, 853–54 (2d Cir. 1996).  When a plaintiff fails to establish a sufficient likelihood of success on the merits, therefore, resort to the irreparable harm requirement is unnecessary and inappropriate.  *E.g., Sal Tinnerello & Sons, Inc. v. Town of Stonington*, 141 F.3d 46, 56 (2d Cir. 1998); *Echezona v. City of New York*, 125 F.3d 843 (2d Cir. 1997); *Geller v. Cuomo*, No. 20 CIV. 4653 (ER), 2020 WL 4463207, at *13 (S.D.N.Y. Aug. 3, 2020).  Here, Plaintiff has not established a likelihood of success on the merits for the reasons discussed above, and therefore also will not suffer any irreparable injury if a TRO does not issue.

Nevertheless, if the Court chooses to reach this issue Plaintiff has not carried its burden to demonstrate irreparable harm.  The legislature's decision to make this type of record subject to FOIA does not necessarily mean that all records will be disclosed.  Rather, the Act triggers the rights, privileges, exemptions and common law defenses that exist under FOIA.  *See, e.g., Perkins v. Freedom of Info. Comm'n*, 228 Conn. 158, 167-75 (1993).  Notwithstanding any provisions in the Act, for example, § 1-210(b)(2) continues to provide that "[n]othing in [FOIA] shall be construed to require disclosure of . . . [p]ersonnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy."  Plaintiff alleges no facts and makes no argument to demonstrate why that statutory exemption is not sufficient to avoid the harm that Plaintiff's members fear.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Plaintiff's motion for a temporary restraining order.

Respectfully submitted,

DEFENDANT JAMES ROVELLA

WILLIAM TONG
ATTORNEY GENERAL

BY: */s/ Michael K. Skold*
Michael K. Skold (ct28407)
Assistant Attorney General
Attorney General's Office
165 Capitol Ave, 5th Flr.
Hartford, CT 06141
860-808-5020 (phone)
860-808-5347 (fax)
Michael.Skold@ct.gov

21

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2020, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


_/s/  Michael K. Skold_
Michael K. Skold
Assistant Attorney General